UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| LAFAYETTE HARPER, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 19-CV-2227 |
| ) | |
| MICHAEL BRANSFORD, BRUCE STARK, ) | |
| JOSH CAMPBELL, PAT ALBLINGER, ) | |
| UNKNOWN DANVILLE POLICE ) | |
| OFFICERS, and CITY OF DANVILLE, ) | |
| ILLINOIS, ) | |
| ) | |
| Defendants. ) | |

# ORDER

Plaintiff, Lafayette Harper, filed a Complaint (#1) against Defendants Michael Bransford, Bruce Stark, Josh Campbell, Pat Alblinger, Unknown Danville Police Officers, and the City of Danville on August 20, 2019, alleging federal civil rights violations under the U.S. Constitution pursuant to 42 U.S.C. § 1983 and Illinois state law claims of malicious prosecution, intentional infliction of emotional distress, and conspiracy.  Defendants filed their Partial Motions to Dismiss (#24, 31) on November 1 and 8, 2019.  Plaintiff filed his Response (#34) on December 2, 2019.  For the following reasons, Defendants' Motions to Dismiss (#24, 31) are GRANTED in part and DENIED in part.

BACKGROUND

The following background is taken from the allegations in Plaintiff's Complaint (#1). At this stage of the proceedings, the court must accept as true all material allegations of the Complaint, drawing all reasonable inferences therefrom in Plaintiff's favor. See *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016).

In general, Plaintiff alleges that Defendants wrongfully and intentionally fabricated false evidence for use against him at two different criminal trials, failed to properly produce exculpatory evidence, initiated and continued criminal proceedings against him without probable cause in violation of Plaintiff's rights as secured by the U.S. Constitution, and caused Plaintiff to be wrongfully and unjustifiably incarcerated for over eight years.

*Factual Allegations*

On October 24, 2009, Tim Shutes was shot and killed while attempting to purchase marijuana in the Elmwood Park neighborhood of Danville, Illinois. Prior to his death, Shutes, together with Randall Smalley, attempted to purchase marijuana from Davieon Harper ("Davieon"), a cousin of Plaintiff. Shutes, along with Smalley, met Davieon outside Shutes' home where Shutes and Smalley joined Davieon in his Dodge Intrepid. Davieon was driving, Smalley was in the passenger seat, and Shutes was seated in the rear passenger-side seat holding the money for the drug transaction.

Davieon drove Smalley and Shutes to Elmwood Park to purchase the marijuana. Several minutes after arriving in Elmwood Park, an unknown assailant approached the vehicle armed with a shotgun, opened the rear passenger door, and demanded the

money from Shutes.  During the struggle, neither Davieon nor Smalley were able to see the assailant's face.  After a brief struggle with the assailant, Shutes was shot in the head and killed.  Once the fatal shot was fired, both Davieon and Smalley fled the car and ran.  Upon returning to his car, Davieon drove Shutes to a local hospital, where he was pronounced dead.

The investigation into the murder of Shutes by Defendant Officers and Unknown Officers almost immediately focused on Plaintiff.  Defendants shortly thereafter developed a "false hypothesis" that Davieon conspired with Plaintiff to steal Shutes' money and kill him if necessary.  Davieon was interviewed by Defendants Campbell and Bransford on October 25 and 26, 2009.  During both interviews, Davieon repeatedly stated he did not know who Shutes' killer was and, in response to questions by Campbell and Bransford, told them that Plaintiff was not the shooter.

Defendants Stark and Alblinger interviewed Smalley on October 24, 2009, the night of the murder, during which time Smalley relayed the events of the night as he remembered them.  At that time, Smalley told Defendants Stark and Alblinger that he was unable to see the shooter's face, and therefore could not identify the shooter.

Unsatisfied with Davieon's initial account, Campbell and Bransford interviewed him again on November 2, 2009, where Davieon again confirmed that he did not know the identity of the shooter.  Even though eyewitnesses described the shooter as wearing gloves, Defendants seized on the fact that Plaintiff's fingerprint was on his cousin Davieon's car and attempted to utilize this evidence to confirm their false hypothesis.  Plaintiff alleges that "even after numerous pieces of evidence were tested against

Plaintiff's DNA, none of the physical evidence collected at the scene implicated Plaintiff."

Defendants later allowed Davieon's car to be destroyed while it was under their control before Plaintiff or his counsel could inspect it for exculpatory evidence prior to both of Plaintiff's trials.

On November 2, 2009, Defendants Campbell and Bransford took Plaintiff into custody and interviewed him, "despite the fact that no witnesses or other evidence at that time implicated Plaintiff." Plaintiff maintained his innocence, and provided Defendants with a detailed and verifiable alibi regarding how he left work, his girlfriend's car broke down, and he went to a service station at Fairchild and Vermilion to get antifreeze, and then another service station to get more antifreeze. Defendants never investigated Plaintiff's alibi. Plaintiff also told Campbell and Bransford that earlier in the day on October 24, 2009, he helped unload groceries into the back seat of Davieon's car.

These statements, and approximately 60 minutes of Plaintiff's interrogation, were either not recorded by Defendants, in violation of Illinois law, or, in the alternative, Defendants intentionally destroyed the recording. Plaintiff alleges that the missing video evidence was highly exculpatory because, at Plaintiff's trials, the State used the fact that Plaintiff's fingerprint was on Davieon's car as evidence of guilt. Plaintiff alleges that if Defendants had not caused the video of his interrogation to go missing he would have been able to use it in his defense to prove that his initial statement to the police explained the presence of his fingerpint on Davieon's car before Plaintiff was

ever aware that his fingerprint was an evidentiary issue.

On May 24, 2010, Defendants Bransford, Stark, and Alblinger again interviewed Smalley. Upon information and belief, "after months of improperly suggestive conversations" with Defendants, which included showing Smalley an individual photograph of Plaintiff, "Defendant Officers knowingly obtained a false identification of Plaintiff from Smalley, who was then presented at trial as a State witness against Plaintiff." Plaintiff alleges that Defendants never disclosed "these improper and suggestive interview tactics used on Randall Smalley to manufacture his wrongful identification of Plaintiff." Defendants never disclosed the fact that Smalley's identification of Plaintiff was completely unreliable because he had repeatedly told Defendants that he was unable to see the shooter and because Defendants had shown Smalley a photo of Plaintiff and suggested that Smalley should identify Plaintiff as the shooter. After Defendants obtained this identification from Smalley, he testified under oath that he in fact was unable to identify the shooter.

Defendants took Logan Vance into custody "for no reason other than to pressure him into providing false evidence against Plaintiff." Plaintiff alleges that Defendants interviewed Vance and "used coercive and suggestive interrogation tactics including threats and promises in order to manipulate Logan Vance into stating he purchased shotgun ammunition on behalf of Plaintiff, only days before the murder of Tim Shutes." The State then used this evidence against Plaintiff at trial. Defendants never disclosed to Plaintiff's defense counsel before trial that such tactics had been used on Vance. It was not until Vance told a woman named Kanesha Malone that he was "forced to

testify" that Plaintiff was able to learn about the coercion used to procure Vance's testimony against Plaintiff.

Davieon was charged in connection with Shutes' death, and was convicted and sentenced to 30 years in prison in 2010. After he was convicted, Defendants "orchestrated a deal with Davieon whereby he would falsely testify that Plaintiff was the shooter in exchange for leniency in Davieon's sentence." Pursuant to the deal, Davieon "falsely testified at the behest of Defendant Officers and Unknown Officers that Plaintiff was the shooter." Following his testimony, Davieon's 30-year sentence was reduced to 11 years and 9 months, with credit for time served, allowing Davieon to be eligible for release just months later.

Plaintiff was arrested and charged with Shutes' murder in November 2010. He first stood trial in October 2014, where he was convicted and sentenced to 65 years in prison. The Illinois Appellate Court ultimately reversed Plaintiff's conviction and granted him a new trial because the first conviction was procured based on improper evidence. *People v. Harper*, 80 N.E.3d 856 (Ill. App. Ct. 2017). Plaintiff was tried again in January 2019, where he was acquitted of all charges.

Plaintiff's Complaint alleges nine counts: due process under § 1983 based on fabrication of evidence (Count I); due process under § 1983 based on deprivation of the right to a fair trial for failure to disclose exculpatory or impeachment evidence (Count II); deprivation of liberty under the Fourth Amendment pursuant to § 1983 (Count III); a claim against Defendant City of Danville pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) (Count IV); Illinois state law

malicious prosecution claim (Count V); Illinois intentional infliction of emotional distress claim (Count VI); Illinois and federal conspiracy claims (Count VII); Illinois respondeat superior claim (Count VIII); and Illinois indemnification claim (Count IX). The court will only go into detail on those claims relevant to the instant motions to dismiss.

Count I alleges that Defendants fabricated evidence against Plaintiff in violation of his rights to due process and a fair trial. Plaintiff alleges that Defendants deliberately fabricated evidence from several witnesses in order to justify the arrest and malicious prosecution of Plaintiff. Count II alleges that Defendants, acting individually, jointly, and/or "in conspiracy," deprived Plaintiff of his right to a fair trial. Plaintiff alleges Defendants, either intentionally or with deliberate indifference, withheld exculpatory and impeachment evidence, violating their duty to report all exculpatory and impeachment materials to prosecutors. Absent this misconduct, Plaintiff alleges, his prosecution would not have been pursued, and he would not have been wrongfully imprisoned in violation of his right to a fair trial under the Due Process Clause.

Count III alleges that Defendants deprived Plaintiff of his liberty without probable cause, in violation of the Fourth Amendment, when they manufactured and fabricated evidence, withheld material and exculpatory information from Plaintiff, and procured supposed eyewitness identification of Plaintiff by use of suggestive identification techniques. Plaintiff alleges Defendants initiated and continued judicial proceedings against him maliciously, resulting in his being detained for 8 years without probable cause. The judicial proceedings were terminated in Plaintiff's favor in January

2019.

Count VII alleges "state and federal law" conspiracy against Defendants. Plaintiff alleges that Defendants, acting in concert with known and unknown co-conspirators, conspired in action to accomplish an unlawful purpose by unlawful means. In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity, including but not limited to the malicious prosecution of Plaintiff and the intentional infliction of emotional distress upon him. The misconduct was undertaken "intentionally, with malice, willfulness, and/or reckless indifference to the rights of others."

ANALYSIS

Defendants make several arguments in support of their motions to dismiss: (1) certain allegations related to Plaintiff's "failure to disclose exculpatory evidence" claim in Count II must be stricken as insufficient bases to allege the deprivation of a right to a fair trial; (2) Plaintiff's pretrial deprivation of liberty claim under the Fourth Amendment in Count III must be dismissed with prejudice because it is barred by the statute of limitations; and (3) Plaintiff has failed to sufficiently plead a claim for conspiracy in Count VII.

*Rule 12(b)(6) Standard*

Under Rule 12(b)(6), a complaint must state a claim to relief that is plausible on its face. *Sloan v. American Brain Tumor Assoc.*, 901 F.3d 891, 894 (7th Cir. 2018). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged. *Sloan*, 901 F.3d at 894. However, where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012). Although a complaint's factual allegations are accepted as true at the pleading stage, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion, and thus, accordingly, threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice. *McReynolds*, 694 F.3d at 885. The plausibility standard calls for a "context-specific" inquiry that requires the court to draw on its judicial experience and common sense. *McReynolds*, 694 F.3d at 885.

*Striking Portions of Plaintiff's Complaint*

The court, at this point, declines to strike the requested portions of Plaintiff's Complaint. Defendants' arguments are well-taken. However, the court would note that the case cited in support, *Harris v. Kuba*, 486 F.3d 1010 (7th Cir. 2007), was decided at summary judgment. See also *Cairel v. Alderden*, 821 F.3d 823 (7th Cir. 2016). The court makes no determination on the merits of Defendants' arguments, and all of Defendants' arguments may be reraised at a later stage in the proceedings where the record can be more fully developed "and when the applicable procedural rules permit a more fulsome and searching analysis." See *Access 4 All, Inc. v. Chicago Grande, Inc.*, 2007 WL 1438167, at *1 (N.D. Ill. May 10, 2007).

*Conspiracy (Count VII)*

For the same reasons, the court denies Defendants' motion as it pertain to the conspiracy count. The court finds, out of an abundance of caution and based on this matter being at the pleading stage, that Plaintiff has stated a claim that contains "enough facts to state a claim to relief that is plausible on its face." See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Again, the court makes no determination on the merits of Defendants' arguments, and all of Defendants' arguments may be reraised at a later stage in the proceedings where the record can be more fully developed "and when the applicable procedural rules permit a more fulsome and searching analysis." See *Access 4 All*, 2007 WL 1438167, at *1.

*Whether Count III is Barred By the Statute of Limitations*

Defendants argue that Plaintiff's "deprivation of liberty" claim in Count III must be dismissed as time barred. Because Plaintiff makes his claim under the Fourth Amendment, which applies only to *pretrial* detention, Defendants argue that Plaintiff's claim began to accrue at his first trial in October 2014, and thus must have been filed no later than October 2016. Because his claim was not filed until September 2019, it is untimely and must be dismissed.

Plaintiff responds that the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994) applies, and thus his claim did not begin to accrue until "proceedings terminated in his favor," which is when he was acquitted at the second trial in January 2019.

As a preliminary matter, Plaintiff clearly states in his Complaint that his claim is brought pursuant to the Fourth Amendment. Therefore, constitutional law related to

that amendment will govern the court's analysis.

Plaintiff's claim is one for wrongful detention brought under § 1983. A § 1983 claim borrows the statute of limitations for analogous personal-injury claims in the forum state, which in Illinois is two years, but when that claim accrues is governed by federal law. *Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019). Therefore, the crucial question before the court is when Plaintiff's wrongful detention claim accrued: in October 2014 after his first conviction, or in January 2019, when he was acquitted.

When a plaintiff challenges the propriety of his time in custody, as Plaintiff does in this case, the Fourth Amendment claim accrues only when the detention ends. *Knox v. Curtis*, 771 Fed.Appx. 656, 658 (7th Cir. June 3, 2019), citing *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018) (*Manuel II*); *Lewis*, 914 F.3d at 478. The Seventh Circuit and local district courts have had occasion to address the timeliness of Fourth Amendment wrongful detention claims many times in recent years.

In *Knox*, the plaintiff was arrested and detained in February 2014 for harassing a witness in a drunk driving case against him. In the case, the plaintiff remained in custody until he was released on bond in August 2017. In November 2017, he was convicted of communicating with a witness and sentenced to two years in prison. He was granted a one year term of parole in March 2018. The plaintiff sued in January 2018 under § 1983, alleging deprivation of liberty under the Fourth Amendment, in that he was detained without probable cause.

The Seventh Circuit found that the plaintiff's claim that he was arrested and detained without probable cause accrued either in August 2017, when he was released

on bond, or in November 2017, when he was convicted, and thus his January 2018 filing was timely. *Knox*, 771 Fed.Appx. at 658. The court also rejected the defendant's argument that, even if the plaintiff's claim was timely, it was barred by *Heck*. The Seventh Circuit found that, to the extent the plaintiff was challenging his post-conviction detention, his claim was indeed barred by *Heck*. *Knox*, 771 Fed.Appx. at 658. However, the portion of his claim that challenged his pretrial detention, "the unlawfulness of which does not have 'any necessary effect on the validity of his conviction[,]'" was not *Heck*-barred. *Knox*, 771 Fed.Appx. at 658-59, quoting *Mordi v. Zeigler*, 870 F.3d 703, 708 (7th Cir. 2017).

In *Lewis*, the defendant was arrested in September 2013, and detained following a probable cause hearing the next day. The plaintiff sat in the Cook County jail for two years, until charges were dropped in September 2015. He filed suit under § 1983 in July 2016. The Seventh Circuit noted that a Fourth Amendment wrongful pretrial detention claim accrued "when the detention ceases." *Lewis*, 914 F.3d at 478. The court also recognized that "'a claim cannot accrue until the would-be plaintiff is entitled to sue, yet the existence of detention forbids a suit for damages contesting that detention's viability.'" *Lewis*, 914 F.3d at 478, quoting *Manuel II*, 903 F.3d at 670. Because the suit was filed within a year of the plaintiff's release from jail following the charges being dropped, it was timely. *Lewis*, 914 F.3d at 478.

In *Brown v. City of Chicago*, 2019 WL 4958214 (N.D. Ill. Oct. 8, 2019), the plaintiff was convicted of one count of arson and two counts of murder in 1990 and again in 2008, after he was granted a new trial. The 2008 convictions were again invalidated in

12

2017, the State of Illinois decided not to retry the plaintiff, and he was released. The plaintiff sued under § 1983, alleging, among other claims, a Fourth Amendment claim for unlawful pretrial detention.

The district court found that any unlawful pretrial detention claim the plaintiff might have had was time-barred under Seventh Circuit precedent holding that such a claim is not subject to the delayed accrual rule from *Heck*. *Brown*, 2019 WL 4958214, at *3, citing *Knox*, 771 Fed.Appx. at 658-59. The court also noted that, while the Seventh Circuit in *Manuel II* held that a claim for pretrial detention without probable cause began to accrue when the pretrial detention ended, the court of appeals in *Knox* "clarified that pretrial detention can be considered as ending upon conviction." *Brown*, 2019 WL 4958214, at *3. Thus, the plaintiff's Fourth Amendment claims for his detention before his 1990 and 2008 trials needed to be filed in 1992 and 2010, respectively. *Brown*, 2019 WL 4958214, at *3.

The court also rejected any attempt by the plaintiff to apply the U.S. Supreme Court's decision in *McDonough v. Smith*, 137 S.Ct. 2149 (2019), because *McDonough* is grounded in a concern for avoiding collateral attacks on criminal judgments through civil litigation, and a Fourth Amendment claim does not constitute such a collateral attack. *Brown*, 2019 WL 4958214, at *3. Therefore, the pretrial detention without probable cause claim was dismissed.

In *Hill v. City of Chicago*, 2020 WL 509031 (N.D. Ill. Jan. 31, 2020), the plaintiff was arrested for murder on September 2, 2009, and was eventually convicted at a bench trial on January 31, 2013. During post-conviction proceedings, the plaintiff presented alibi

13

evidence along with exculpatory evidence from another witness. The State did not oppose the plaintiff's request to vacate his conviction, and the conviction was overturned on September 12, 2018. The plaintiff sued under § 1983 alleging unlawful pretrial detention pursuant to the Fourth Amendment.

In seeking to dismiss the Fourth Amendment claim, the defendants argued that the plaintiff's claim accrued no later than the date of his conviction, January 31, 2013. The plaintiff maintained that his claim did not accrue until the conviction was overturned in September 2018.

The district court rejected the plaintiff's argument, finding that *Heck* did not toll the statute of limitations on Fourth Amendment unlawful pretrial detention claims. Like the district court in *Brown*, the *Hill* court found that *McDonough* did not help the plaintiff's accrual argument because that case was concerned with avoiding "collateral attacks on criminal judgments through civil litigation." *Hill*, 2020 WL 509031, at *4, citing *Brown*, 2019 WL 4958214, at *3, quoting *McDonough*, 139 S. Ct. at 2157. The court further found that "unlike fair trial claims, Fourth Amendment claims as a group do not necessarily imply the invalidity of a criminal conviction, and so such claims are not suspended under the *Heck* bar to suit." *Hill*, 2020 WL 509031, at *4, quoting *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008). Citing *Knox*, the *Hill* court noted that the Seventh Circuit "recently clarified that a wrongful pretrial detention claim accrues upon conviction (if not sooner)." *Hill*, 2020 WL 509031, at *4, citing *Knox*, 771 Fed.Appx. at 658. Accordingly, the court found that the plaintiff's wrongful pretrial detention claim accrued no later than January 31, 2013, and that the statute of limitations had long since

run.

A different result, however, was reached by the district court in *Taylor v. City of Chicago*, 2019 WL 4597383 (N.D. Ill. Sept. 23, 2019). In *Taylor*, the plaintiff was arrested in 1992 on murder charges and was convicted of those charges following a trial in 1995. Eventually, after years of post-conviction proceedings and a reinvestigation of the case by the State's Attorney's Office, the plaintiff was released from prison in 2013 and granted a Certificate of Innocence on January 23, 2014. He filed a § 1983 lawsuit in February 2014, alleging that the officer defendants violated his Fourth Amendment rights by detaining and wrongfully imprisoning him from December 1992 to June 2013.

The defendants contended that the claim accrued at the conclusion of the plaintiff's trial on September 7, 1995, when his "pretrial" detention ended. The plaintiff, on the other hand, contended that the claim did not accrue until he was released from custody and was entitled to sue, which occurred in 2013.

The court noted that, in *Manuel II*, the Seventh Circuit held that a Fourth Amendment wrongful detention claim accrues when the period of detention ends. *Manuel II*, 903 F.3d at 670. However, as the defendants pointed out, the Supreme Court in its *Manuel* case posited that "once a trial has occurred, the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment." *Manuel v. City of Joliet*, 137 S.Ct. 911, 920 n.8 (2017).

Having examined the case law, the district court concluded that the plaintiff could not have brought his Fourth Amendment claim at any point prior to his release in 2013:

> It is well-established that "§ 1983 cannot be used to contest ongoing custody that has been properly authorized." *Manuel II*, 903 F.3d at 670. Had Taylor attempted to bring this claim while still in custody that had been authorized by the judicial process, it would have been barred by *Heck v. Humphrey*, 512 U.S. 477 (1993). That is because success on the claim would have "necessarily impl[ied]" that his conviction was invalid. *Id.* at 487. Taylor alleges that he was wrongfully detained based on fabricated evidence—the same evidence that was used to convict him at trial. Under these circumstances, "[t]he wrong of detention without probable cause continues for the duration of the detention. That's the principal reason why the claim accrues when the detention ends." *Manuel II*, 903 F.3d at 670. Accordingly, Taylor could not have challenged his detention after his conviction until 2013, when he was released. See *Roldan v. Town of Cicero*, No. 17-cv-3707, 2019 WL 1382101, at *3 (N.D. Ill. Mar. 27, 2019).

*Taylor*, 2019 WL 4597383, at *16.

Having examined the existing case law, the court concludes that Plaintiff's Fourth Amendment claim is time-barred. Based on the Seventh Circuit's decision in *Knox*, the court finds that *Brown* and *Hill* are better reasoned and more applicable to this case than the district court decision in *Taylor*.

As noted in *Brown*, the Seventh Circuit's decision in *Knox* "clarified" its earlier holding in *Manuel II* by noting that, while a claim for pretrial detention without probable cause begins to accrue when the pretrial detention ends, such as when a defendant is released on bond before trial, "that pretrial detention [also] can be considered as ending upon conviction." *Brown*, 2019 WL 4958214, at *3, citing *Knox*, 771 Fed.Appx. at 658. Once a defendant is convicted at trial, they are no longer in "pretrial" detention, but are being detained "post" trial pursuant to their conviction. Thus, the pretrial detention has ended, just as pretrial detention ends if someone is released on bond prior to trial. This harmonizes the Seventh Circuit's *Manuel II* holding with the Supreme Court's holding in *Manuel* that "once a trial has occurred, the Fourth

16

Amendment drops out[,]" and that any challenge to further detention beyond that point must be made pursuant to the Due Process Clause of the Fourteenth Amendment. *Manuel*, 137 S.Ct. at 920 n.8.

Further, just as important as what the Seventh Circuit said in *Knox* is what the court did *not* say. The court stated that the plaintiff's Fourth Amendment claim accrued when he was either (1) released on bond in August 2017 or (2) when he was convicted in November 2017. *Knox*, 771 Fed.Appx. at 658. The plaintiff was sentenced to two years in prison following his conviction, and remained in prison until his parole in March 2018. However, nowhere in the decision does the Seventh Circuit hold that he was "released from detention" in March 2018, so as to allow the Fourth Amendment claim to accrue from that date. Thus, in the instant case, for Fourth Amendment wrongful pretrial detention purposes, Plaintiff's claim accrued, at the latest, when he was convicted at trial in October 2014. See *Knox*, 771 Fed.Appx. at 658; *Brown*, 2019 WL 4958214, at *3; *Hill*, 2020 WL 509031, at *4. Plaintiff's Fourth Amendment wrongful pretrial detention claim would have needed to be brought by October 2016.[1] Also, for the reasons cited in the case law discussed above, Plaintiff's unlawful pretrial detention claim is not subject to the delayed accrual rule from *Heck*. See *Brown*, 2009 WL 4958214, at *3; *Hill*, 2020 WL 509031, at *4; *Knox*, 771 Fed.Appx. at 658-59.

However, unlike the *Brown*, *Knox*, and *Hill* cases, Plaintiff's instant case contains

---

[1] The court agrees with Defendants that claims for pretrial deprivation of liberty and posttrial deprivations of liberty are separate, distinct claims, which are brought under different constitutional provisions. See *Lewis*, 914 F.3d at 479-80. In any event, Plaintiff's claims regarding his posttrial deprivation of liberty (from October 2014 to July 2017) are tied in his with his wrongful conviction claims in Counts I and II, brought pursuant to the Due Process Clause of the Fourteenth Amendment.

17

an additional wrinkle. Once Plaintiff was convicted in October 2014, he was no longer in pretrial detention, but was in posttrial custody. Then, in July 2017 the Illinois Appellate Court overturned his conviction, and he was again in "pretrial detention" awaiting trial. In that case, Plaintiff's pretrial detention ended in January 2019, when he was acquitted at trial and released from custody. Thus, any wrongful pretrial detention claim from July 2017 forward would be timely, since Plaintiff filed suit in August 2019. That such a claim would be timely was expressly contemplated by Defendant Alblinger, who in his motion argues "[i]n the alternative, Count III should be limited to the period of time between July 13, 2017, when his conviction was overturned, and his release from custody in January 2019[,]" because that is the only time since Plaintiff's "conviction in 2014 that he was even arguably a pretrial detainee and a claim for such a period of time might be timely."

The court agrees with Defendant Alblinger's "alternative" suggestion. Defendants' motion is GRANTED as to Count III. However, Plaintiff is allowed 21 days from the date of this order to file an amended complaint clarifying whether he is pursuing a claim for wrongful pretrial detention under the Fourth Amendment for the July 2017 to January 2019 period.

IT IS THEREFORE ORDERED:

(1) Defendants' Motions to Dismiss (#24, 31) are GRANTED in part and DENIED in part. Count III of Plaintiff's Complaint is dismissed without prejudice. Plaintiff is given 21 days from the date of this Order to file an amended complaint, if he so decides, in a manner consistent with the

holding in this Order.

(2)  This matter is referred to the magistrate judge for further proceedings in accordance with this order.

ENTERED this 17th day of April, 2020.

s/ COLIN S. BRUCE<br>U.S. DISTRICT JUDGE